# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

**GARY L. STIBB,**

        **Petitioner,**

      **v.**                                           **Case No. 04-C-84**

**MATTHEW J. FRANK,**

        **Respondent.**

_____

## DECISION AND ORDER ON THE PETITION FOR HABEAS CORPUS
_____

### I. INTRODUCTION

Gary L. Stibb ("Stibb") is a prisoner incarcerated pursuant to a state court judgment of conviction for child enticement. Proceeding pro se, Stibb seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was screened in accordance with Rule 4 of the Rules Governing Section 2254 cases, and the respondent was ordered to answer the three grounds for relief set forth in Stibb's petition: (1) that Stibb was denied effective assistance of counsel; (2) that Stibb's right to due process was violated when the court declined to strike a biased juror for cause; and (3) that Stibb's right to due process was violated by the highly suggestive circumstances of his identification.

On March 3, 2004, the respondent filed its answer, admitting exhaustion and timeliness but contending that a writ of habeas corpus should not issue. Stibb subsequently filed several motions, including a motion for an extension of time to reply to the respondent's answer. This court granted that motion, requiring Stibb to file his reply no later than July 1, 2004. (Order at 2, June 1, 2004.).

No reply brief was filed. However, more than three months later, Stibb filed a motion for summary judgment in which he argues that the three grounds for relief set forth in his petition have merit and that this court should issue a writ of habeas corpus. Essentially, the motion for summary judgment is a reply brief. It will be accepted as such, despite its untimeliness, and the motion for summary judgment will be denied without further discussion. Accordingly, Stibb has had adequate opportunity to present his three claims, and the petition is now ready for resolution.

## II. STANDARDS OF REVIEW

Where the state court adjudicates the merits of a petitioner's claim, this court may grant habeas corpus relief if the state court decision:

> (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Section 2254(d)(1) establishes two independent grounds on which a federal court can grant habeas corpus relief. Williams v. Taylor, 529 U.S. 362, 404-05 (2000); see also Washington v. Smith, 219 F.3d 620, 627-28 (7th Cir.2000). The "contrary to" standard requires a state court decision to be "substantially different from the relevant precedent of [the Supreme Court]." Williams, 529 U.S. at 405. For example, a state court decision applying a rule that contradicts the governing law set forth by the Supreme Court would qualify, as would a decision that involves a set of facts materially indistinguishable from a Supreme Court case that arrives at a different result. Id. at 405-06. By contrast, a state court decision that draws from Supreme Court precedent the correct legal rule and applies it in a factually distinguishable situation will not satisfy the "contrary to" standard, no matter

2

how misguided the decision's ultimate conclusion. Id. at 406-07.

Under the "unreasonable application" prong of (d)(1), relief may be granted if the petitioner shows that, despite identifying the correct rule of law, the state court unreasonably applied it to the facts of the case. Williams, 529 U.S. at 404. An unreasonable application of federal law, however, is different from the incorrect or erroneous application of federal law. Boss v. Pierce, 263 F.3d 734, 739 (7th Cir. 2001)(citing Williams, 529 U.S. at 410). A federal court simply disagreeing with the state court decision does not warrant habeas relief — the decision's application of Supreme Court precedent must be so erroneous as to be objectively unreasonable. Middleton v. McNeil, 541 U.S. 433, 436 (2004); Yarborough v. Gentry, 540 U.S. 1, 5 (2003).

Under section 2254(d)(2), relief may be had where the petitioner demonstrates that the state court made an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Here again, an "unreasonable determination" is more than a determination with which the reviewing court simply disagrees. State court factual determinations are presumed correct, and the petitioner has the burden of rebutting the presumption of correctness by "clear and convincing evidence." § 2254(e)(1). Rice v. Collins, --- U.S. ---, 126 S.Ct. 969, 974 (2006)(citing Miller-El v. Dretke, 545 U.S. ----, ----, 125 S.Ct. 2317, 2325 (2005)).

And finally, if the petitioner demonstrates constitutional error under section 2254(d), he is not entitled to habeas corpus relief where such error is deemed harmless; that is, the error could not have had a substantial and injurious effect or influence on the jury's verdict. O'Neal v. McAninch, 513 U.S. 432, 436 (1995)(internal citations omitted).

With the § 2254(d) and (e)(1) standards in mind, the court will now turn to the three challenges raised by Stibb.

3

### III. DUE PROCESS VIOLATION: JUROR BIAS

In his first ground for relief, Stibb says that his right to due process was violated when the trial court declined to strike a female juror named Anderson ("Anderson"). Stibb contends that Anderson should have been stricken for cause, after Anderson indicated that she would be more likely to find Stibb guilty of enticement if he had previously committed similar crimes. Stibb also says that the court's failure to adequately question Anderson about her inclinations and potential biases deprived him of the right to due process, with both acts resulting in a non-impartial jury.

An impartial jury is one that determines guilt on the basis of the judge's instructions and the evidence introduced at trial, rather than preconceptions or other extraneous sources of decision. Patton v. Yount, 467 U.S. 1025, 1037 n.12 (1984); Irvin v. Dowd, 366 U.S. 717, 721-23 (1961); see also United States v. McClinton, 135 F.3d 1178, 1185-86 (7th Cir.1998). Due process requires the trial judge, if he becomes aware of a possible source of bias, to "determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial." Remmer v. United States, 347 U.S. 227, 230 (1954); see also United States v. Thomas, 463 F.2d 1061, 1063-64 (7th Cir.1972). Thus, putting the two points together, due process means (1) a jury capable and willing to decide the case solely on the evidence before it, and (2) a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen. Smith v. Phillips, 455 U.S. 209, 217 (1982).

Stibb challenges both due process requirements. His challenge to the state courts' determinations that Anderson was an impartial juror is a question of fact that the court reviews under the standards set forth in § 2254(d)(2) and (e)(1). Thompson v. Keohane, 516 U.S. 99, 99 (1995); Wainwright v. Witt, 469 U.S. 412, 428 (1985); Patton v. Yount, 467 U.S. 1025, 1036 (1984); Oswald

4

v. Bertrand, 249 F.Supp.2d 1078, 1097 (E.D. Wis. 2003). Stibb's second argument, that the trial court inadequately explored Anderson's potential bias, is a reviewed pursuant the standards set forth in § 2254(d)(1). See Oswald v. Bertrand, 374 F.3d 475, 477 (7th Cir. 2004).

The Wisconsin courts determined that Anderson would be an impartial juror despite comments that she would be more inclined to find Stibb guilty of enticement if he had been convicted of a sexual assault in the past. This court agrees and finds that Stibb has not satisfied the § 2254(d) standards with respect to either of his claims.

During voir dire, counsel asked the jury panel whether Stibb's previous conviction for sexual assault of a minor would influence their opinion about whether Stibb was guilty of enticement. Anderson responded that it would. To investigate Anderson's statements further, the trial court summoned Anderson to his chambers where she was questioned by Stibb's counsel and by the court. In repeating her response to the question on voir dire, and explaining her feelings about Stibb's prior convictions, the following colloquy took place:

> ANDERSON: I certainly would not consider [Stibb] guilty because of, you know, having been charged with a previous assault case, but I think that I might feel that he might be -- how can I say this. It might be more possible perhaps for him to do this to a child because of his previous experience in a sexual assault trial. As compared to you or you or somebody else. But I also feel that -- I really would hope that I would be able to view the evidence in its entirety and not let this possible bias enter into my vote . . . .
>
> * * *
>
> DEFENSE COUSEL: What I hear you saying is that you think you may have this tendency of bias but you're going to fight that bias and try and look at the evidence in this case.
>
> ANDERSON: Yes, that's right.
>
> DEFENSE COUNSEL: Let me ask you this. If you heard evidence in this case that not only was it a prior conviction for sexual assault but it was a prior conviction for

5

> sexual assault of someone under 18, would that be too much for you to fairly look at the evidence and not conclude basically, in ordinary terms, well if he did that, then he must be the person here?
>
> ANDERSON: I would think that I would probably feel a little stronger that if it was done once before with a child that perhaps it might be done again. But, I still, you know, I consider myself a fair person, and I would certainly try - and probably be able to view the case without bias. But I do think, because if it were the same type of crime before that your client was found guilty of, I think I might feel that perhaps it would be a better than not chance that it would happen again.
>
> DEFENSE COUNSEL: If the judge were to tell you that these prior convictions are only offered for a limited purpose, and you are instructed that here is the purpose that they're offered for and here's how you can consider them, will you follow - do you believe you could follow those instructions or do you think in the back of your mind your bias and suggestion may get the best of you?
>
> ANDERSON: I would think that I would have to say again, if it were the same type of crime happening again that I would possibly be biased.
>
> DEFENSE COUNSEL: And as you sit here before the small group of us, this is a bias that you feel that you wouldn't be able to set aside no matter how you were instructed?
>
> ANDERSON: I would certainly try. And as I say, you know, I consider myself a fair person. I would listen to everything and I would certainly try not to let that enter into my vote one way or the other. I think I could. I think I could.

(Stibb Br. Ex. B-D (emphasis added).).

Clearly, the trial court allowed adequate opportunity for Stibb's counsel to inquire further about any preconceived notions held by Anderson. After recognizing a potential for bias during voir dire, the court summoned Anderson for further questioning. Questioning resulted in answers that were responsive and thoughtful, and the colloquy is far from perfunctory. Accordingly, relief is not warranted on this basis, and the court will turn its attention to the state courts' determinations that Anderson was an impartial juror.

6

The Wisconsin trial court and Court of Appeals determined that Anderson was impartial despite occasional statements that she might be affected by bias. For several reasons, this court finds those determinations to be sound. First, Anderson repeatedly stated that she believed herself to be a fair person, that she would view the evidence in its entirety, and that she would not let any potential bias impact her vote. The state courts reasonably concluded that these many statements overcome Anderson's occasional use of the term bias. In addition, defense counsel used the term "bias" in the questions that he posed to Anderson. Thus, it is not unusual that Anderson would respond using the same term.

Moreover, jurors undoubtedly bring preconceptions, their thought processes, and their life experiences into the courtroom. That does not mean that such jurors are biased, and the distinction between an impartial juror with preconceptions and a biased juror may not have been apparent to Anderson. As aptly explained by the Seventh Circuit, bias exists only if a juror's preconceived notion is "irrational or unshakable, so that the prospective juror would be unable to faithfully and impartially apply the law." Thompson v. Altheimer & Gray, 248 F.3d 621, 625 (7th Cir. 2001)(emphasis in original)(quoting Wainwright v. Witt, 469 U.S. 412, 424 (1985)). Here, Anderson's final statement that she believed she could put her preconceptions aside constitutes an unequivocal assurance that her preconceptions were "shakable."

Other statements made during the course of the questioning, such as Anderson's statement that she "consider[s] [her]self a fair person, and . . . would certainly try - and probably be able to view the case without bias," further support the state courts' decision that Anderson would be a suitable juror. In light of the foregoing, and because of the deference that this court must afford to the state courts' decision under § 2254(d)(2) and (e)(1), habeas corpus relief is not warranted as to this ground.

7

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

In his second ground for relief, Stibb asserts that his trial counsel was ineffective (1) for failing to object to an allegedly suggestive, in-court identification and (2) for failing to introduce evidence that the lettering on Stibb's license plate was red. Stibb deems the color of his license plate an important piece of evidence because Brittany reported that the perpetrator's vehicle had blue letters.

To prevail on an ineffective-assistance-of counsel-claim, a petitioner must demonstrate that the Wisconsin courts' decision was either contrary to, or the based on an unreasonable application of, federal law. Walker v. Litscher, 421 F.3d 549, 558 (7th Cir. 2005)(applying § 2254(d)(1) standards); Williams v. Davis, 301 F.3d 625, 631 (7th Cir. 2002)(same). The applicable federal law governing ineffective assistance claims is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Strickland requires Stibb to show (1) his attorney's performance fell below an objective standard of reasonableness and (2) the deficient performance caused him prejudice. 466 U.S. at 687-88 (1984); Roche v. Davis, 291 F.3d 473, 481-82 (7th Cir.2002); Montenegro v. United States, 248 F.3d 585, 590 (7th Cir. 2001). Courts review counsel's performance under the first prong deferentially, presuming reasonable judgment unless the factual record rebuts such a presumption. See Strickland, 466 U.S. at 689; Matheney v. Anderson, 253 F.3d 1025, 1039 (7th Cir. 2001).

With regard to the prejudice element, the petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. See Strickland, 466 U.S. at 689; Matheney, 253 F.3d at 1039-40. If the court finds that the counsel's alleged deficiency did not prejudice the defendant, under the second prong, the court does not need to consider the first prong of the Strickland test. Berkey v. United States, 318 F.3d 768, 772 (7th Cir. 2003).

8

Stibb's claim based on the victim's in-court identification will be addressed first. The enticement victim, Brittany, first identified Stibb as the perpetrator in a photo array line-up. Based on that identification, together with other evidence, Stibb was arrested. Then, at Stibb's preliminary hearing, and during a suppression hearing, Brittany again identified Stibb as the perpetrator. Stibb's habeas corpus challenge is based on the latter, in-court pretrial identifications. He says that those identifications were unduly suggestive because he was wearing a prisoner's uniform, was in restraints, and was the only person in court at the time. Thus, Stibb argues that it was incumbent upon his attorney to object to the identifications and that failure to do so constitutes ineffective assistance.

In addressing this claim, the Wisconsin Court of Appeals did not make factual determinations about Stibb's appearance at the time of his identification and did not address the first Strickland prong. (Ans. Ex. E at 5, n.2-3, see id 9-10.). Instead, the Court of Appeals focused on whether the circumstances of the in-court identifications were prejudicial, under the second Strickland prong. The Court of Appeals reasoned that, even if the identifications were impermissibly suggestive, other evidence indicates that the identifications were reliable. This determination was based on the fact that Brittany had adequate time to view the perpetrator, viewed the perpetrator from a short distance, had sufficient light, and was able to not that the perpetrator had a mole or a similar mark next to his nose and possibly a scar on his cheek. (Id. at 6, 11.). In addition, from the Court of Appeals' perspective, Brittany's testimony reflected that she devoted a high degree of attention to the perpetrator — she first thought that the man in the truck might be her neighbor but than saw that it was not and gave a detailed description of the perpetrator that resulted in a composite drawing which the trial court found to be a stunning likeness of Stibb. (Id. at 11.). In light of those considerations, the Court of Appeals found that the identification was reliable. Thus, even if Stibb's counsel had objected to the in-court

9

identification procedures, Brittany's identifications would be admissible, and failure to object to the procedures used did not prejudice Stibb. (Id.).

The Court of Appeals' determination is not an unreasonable application of the standards set forth in Strickland. In fact, Stibb does not contest any of the considerations upon which the Court of Appeals relied or argue that the Court of Appeals' analysis is misguided. He simply reasserts that the identification was suggestive. This is problematic because, even if this court disagreed with the Court of Appeals' determination, the court could not say that the decision is objectively unreasonable for purposes of § 2254(d)(1).

Moreover, prior to the time that Brittany identified Stibb in court, she had identified him in a photo array, which was conducted closer in time to the offense. Thus, even if Stibb's counsel had objected to the in-court identification, and that evidence was excluded, the prosecution still had one identification upon which it could rely. It also had Brittany's detailed description of the perpetrator, which largely matched Stibb, and other incriminating evidence. In his petition, Stibb does not explain why the in-court identifications were critical to his conviction. It appears that the identifications redundant of other evidence and, the court cannot say that the result of Stibb's trial would likely have been different if his attorney objected to the in-court identifications. For these reasons, the Court of Appeals' decision is not unreasonable, and habeas corpus relief is not warranted on this basis.

The same is true with respect to the claim Stibb's based on the color of his license plate. As mentioned earlier, Stibb deems evidence that his license plate had red lettering an important because Brittany reported that the perpetrator's vehicle had blue letters. Stibb contends that the red lettering demonstrates that he does not fit the description of the perpetrator. In addition, Stibb also says that a photograph of his truck introduced at trial was blurred and appeared to have blue letters. Given the

10

misleading appearance of the photograph, Stibb says that it was incumbent upon his attorney to point out that color discrepancy.

The Wisconsin Court of Appeals concluded that Stibb's trial counsel did not error by declining to challenge the accuracy of the photographs. As grounds, the Court cited two justifications for the trial strategy used. First, the Court of Appeals noted that trial counsel did not want the jury looking at the actual license plates because Stibb's license plate began with the letter "A," as Brittany reported. Second, the Court of Appeals noted that any challenge to evidence that Stibb was the perpetrator would open the door to the state's rebuttal witness, Timothy Treadway ("Treadway"). Treadway was a jail informant who was prepared to testify that Stibb confided in him about committing the offense. Treadway also knew further details about the vehicle Stibb was driving that were consistent with Brittany's description of the perpetrator's vehicle.

In light of the two reasons asserted by Stibb's trial counsel, the Court of Appeals concluded that presenting Stibb's actual license plates to the jury was "a double-edged sword." (Ans. Ex. E at 15.). On the one hand, the plates might contradict Brittany's description. On the other hand, however, the plates would trigger incriminating evidence that might outweigh the exculpatory value of proceeding as Stibb suggests. Thus, the Court concluded that it was professionally reasonable for Stibb's trial counsel to decline from presenting the license plate and no error was committed. (Id. at 15-17.).

This court agrees. There was clearly a risk associated with introducing the license plates, and trial counsel weighed that risk against highlighting the fact that Stibb's license contained red letters. The testimony of Treadway or the jury's close inspection of the license plates might have made the jury more likely to convict Stibb. Thus, the Court of Appeals appropriately viewed trial counsel's

11

decision with deference, presuming that it was based upon reasonable judgment. Doing so does not contradict the standards set forth in Strickland, and relief on this ground will be denied.

## V.  DUE PROCESS VIOLATION: IDENTIFICATION

In his final ground for relief, Stibb says that his right to due process was violated by Brittany's in-court identifications. Eyewitness identification testimony can violate a defendant's constitutional right to due process of law when it creates a "'substantial likelihood of irreparable misidentification.'" Neil v. Biggers, 409 U.S. 188, 198 (1972)(quoting Simmons v. United States, 390 U.S. 377, 384 (1968)); Gregory-Bey v. Hanks, 332 F.3d 1036, 1045-46 (7th Cir. 2003); Cossel v. Miller, 229 F.3d 649, 655 (7th Cir.2000). To establish that an identification procedure was unconstitutional, the petitioner must demonstrate that the identification procedures were unduly suggestive. United States v. Traeger, 289 F.3d 461, 473-74 (7th Cir.2002); United States v. Harris, 281 F.3d 667, 670 (2002). If the petitioner makes such a showing, the court must then determine, under the "totality of the circumstances," whether the identification was sufficiently reliable to prevent misidentification. Traeger, 289 F.3d at 473-74; Harris, 281 F.3d at 670. In assessing the reliability of an identification procedure, the courts consider the following factors: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. Biggers, 409 U.S. at 199-200.

Stibb applies the Biggers factors in his petition and argues that Brittany's identifications were unreliable. The Wisconsin Court of Appeals did not consider whether the in-court identifications violated due process because Stibb's trial counsel did not raise that objection. However, the Court

12

of Appeals' determination that Stibb was not denied ineffective assistance of trial counsel was based on an analysis of the factors set forth in Biggers and the resultant conclusion that Brittany's identification was reliable.  For reasons already discussed, that finding is not contrary to or based on an unreasonable application of federal law and the petition will be denied as to this ground for relief.

For all the reasons discussed herein, the court now enters the following order on Stibb's petition for a writ of habeas corpus:

**IT IS THEREFORE ORDERED** that Stibb's motion for summary judgment is **denied.**

**IT IS THEREFORE ORDERED** that the petition for a writ of habeas corpus is **denied** and this case is **dismissed** on its merits**.**

Dated at Milwaukee, Wisconsin this 13th day of March, 2006.

s/AARON E. GOODSTEIN
United States Magistrate Judge